# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **TEXAS GENERAL HOSPITAL, LP,** | § | |
| **AND TEXAS GENERAL GP, L.L.C.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.:** |
| | § | |
| **UNITED HEALTHCARE SERVICES, INC.,** | § | |
| **AND UNITEDHEALTHCARE** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiffs Texas General Hospital, LP, and Texas General GP, L.L.C. (collectively, "Texas General") file this Original Complaint against Defendants United HealthCare Services, Inc. ("UHS"), and UnitedHealthcare Insurance Company ("UHIC") (collectively, "United" or "Defendants"), and would respectfully show the Court as follows:

## I.      INTRODUCTION

1.      Texas General files this Original Complaint against Defendants, because Defendants have engaged in a pattern of drastically underpaying and refusing to pay Texas General for health insurance claims that Texas General has submitted to Defendants for reimbursements.  Since at least March 2012, and continuing through the present, Defendants have underpaid Texas General by more than eighty-eight million dollars ($88,000,000).

2.      Defendants provide health care insurance, administration, and/or benefits to insureds or plan participants pursuant to a variety of health care benefit plans and policies of

insurance, including employer-sponsored benefit plans, government-sponsored benefit plans, and individual health benefit plans.

3.     As shown further below, in violation of their duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and state law, Defendants have failed and refused to pay Texas General in full for health care services that Texas General has provided to patients covered by the health care benefit plans and policies of insurance provided or administered by Defendants ("United Subscribers").

4.     Specifically, since at least March 2012, and continuing through the present, Texas General has treated approximately 2,500 United Subscribers at its hospital.  Texas General submitted to the Defendants, as the insurance carriers for the United Subscribers, claims for reimbursement related to the medical treatment Texas General provided to those 2,500 United Subscribers.  Texas General's total billed charges for these claims were approximately $187,000,000.  Defendants have reimbursed Texas General for less than half of this amount— approximately $67,000,000.  Even after adjustments made by Texas General, the total unpaid amount remains more than $88,000,000.

5.     For approximately 1,500 of these claims, Defendants have reimbursed Texas General at or below 50 percent of Texas General's billed charges, including more than 1,200 claims reimbursed at or below 25 percent of Texas General's billed charges, approximately 1,000 claims reimbursed at or below 12 percent, and approximately 750 claims reimbursed at or below two percent of Texas General's billed charges.

6.     Defendants' pattern of dramatically underpaying Texas General is in clear violation of the terms of Defendants' plan(s) or policy(ies) of insurance covering the United Subscribers (referred to herein as the "Plans"), as well as state and federal law.

## II.   THE PARTIES

7.     Plaintiff Texas General Hospital, LP is a limited partnership organized under the laws of the State of Texas with its principal place of business at 2709 Hospital Boulevard, Grand Prairie, Texas 75051.  All of its partners are citizens of the State of Texas.

8.     Plaintiff Texas General GP, L.L.C. is a limited liability corporation organized under the laws of the State of Texas with its principal place of business in the State of Texas. All of its members are likewise citizens of the State of Texas.

9.     Plaintiffs operate and manage a licensed general acute care hospital doing business as Texas General Hospital ("TGH").

10.    Defendant UHS is a corporation of the State of Minnesota with its principal place of business located at 9700 Health Care Lane, Minnetonka, Minnesota 55343.

11.    Defendant UHIC is a corporation of the State of Minnesota with its principal place of business located in the State of Minnesota.

12.    Defendants are in the business of providing health benefit plans and policies of health insurance, including individual health benefit plans, employer-sponsored group health plans, and government-sponsored health benefit plans, including, but not limited to, the plans that covered the treatment received by the United Subscribers.

## III.   JURISDICTION AND VENUE

13.    The Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Texas General asserts claims against Defendants, in Counts One, Two, and Three, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

14.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the

sum or value of $75,000, exclusive of interest and costs.

15.     This Court also has supplemental jurisdiction over Texas General's state law claims against Defendants, in Counts Four through Nine, because these claims are so related to Texas General's federal claims that Texas General's state law claims form a part of the same case or controversy under Article III of the United States Constitution.  As such, the Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

16.     This Court has personal jurisdiction over the Defendants because, at all times material hereto, Defendants carried on one or more businesses or business ventures in this judicial district; there is the requisite nexus between the business(es) and this action; and Defendants engaged in substantial and not isolated activity within this judicial district.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial portion of the events giving rise to this action arose in this District.

### IV.     GENERAL ALLEGATIONS

**A.     Texas General Hospital.**

18.     TGH opened in 2012 in Grand Prairie, Texas, and is the only full-service, in-patient hospital located in Grand Prairie, Texas.

19.     TGH currently operates as a for-profit hospital.  As such, it is not eligible for tax exempt status as a charitable organization and it receives no federal or state subsidies.

20.     TGH's mission statement provides as follows:

Texas General Hospital is committed to providing Grand Prairie and the surrounding communities with quality, safe, superior, timely and comprehensive patient-centered care through our innovative team approach. Our commitment to our clients encompasses premier physician relationships in various specialties as well as fostering educational and academic opportunities. We exhibit stewardship and creativity in the management of all available resources to promote future growth.

21.     TGH provides a wide variety of services for its patients, including:  Emergency; Imaging; Cardiology; Cosmetic and Reconstructive Surgery; Digestive Health; Orthopedics; Men's Health; Women's Health; Primary Care; Weight Loss; Sleep Medicine; and Respiratory.

22.     Based on data for the fourth quarter of 2014, TGH's patient base is comprised of the following:  (i) uninsured patients: 32%; (ii) patients insured by Medicare: 34%; (iii) patients insured by Medicaid:  9%; and (iv) patients insured by commercial insurance carriers: 25%.

23.     TGH and the independent physicians attending to patients at TGH are required by law to provide emergency care to any patient regardless of the patient's ability to pay and regardless of source of insurance payment.  A patient's ability to pay in no way affects or impedes TGH's delivery of health care.

**B.      TGH's Out-of-Network Status.**

24.     Health care providers are either "in-network" or "out-of-network" with respect to insurance carriers. "In-network" or "participating" providers are those who contract with health insurers that require them to accept discounted negotiated rates as payment in full for covered services.

25.     "Out-of-network" or "non-participating" providers are those that do not have contracts with insurance carriers to accept discounted rates and, instead, set their own fees for services based on a percentage of charges.  TGH is an out-of-network provider.

26.     Texas law does not specify how out-of-network charges must be determined.  In 2014, TGH collected less than 7% of its total billed charges from insurers and patients.  Upon information and belief, on an aggregate basis, commercial insurers pay TGH less than or equal to the amounts the insurers pay in-network providers.

27.     Texas General has been and remains willing to have TGH become an in-network

provider with Defendants provided that Defendants  are willing to provide in-network rates that would be sufficient to allow the hospital to sustain itself, meet its continuing obligations to provide community access to quality healthcare services, and generate a reasonable profit.  To date, however, Texas General has been unable to negotiate sustainable in-network rates with Defendants.

28.     Notably, several for-profit hospitals in Texas have been forced to seek bankruptcy protection or close within the last twelve months because of inadequate in-network arrangements.  These include the Cleveland (Texas) Regional Medical Center; the Lake Whitney (Texas) Medical Center; and the University General Health Hospital (Dallas).

**C.     TGH's Out-of-Network Status is Well Known to Patients and the Public.**

29.     TGH prominently advises its patients and the public of its out-of-network status. Documents identifying TGH as an out-of-network hospital are provided to patients when they enter the hospital and when they agree to receive treatment.  In addition, signs in the admitting area of TGH inform patients that TGH is an out-of-network hospital.

30.     TGH's website also currently directs patients to a webpage that explains the difference between in-network and out-of-network providers, and how TGH bills insurers and patients.

31.     TGH's billing office is available to answer questions from patients, explain and review a patient's bill, and discuss payment options**.**  TGH also directs patients to contact their carrier to understand their out-of-network benefits.

**D.     United Subscribers Regularly Seek Treatment at TGH.**

32.     In many cases, Defendants charge United Subscribers higher premiums for the inclusion of "out-of-network" benefits in their Plans.  Despite the foregoing, and despite TGH's

out-of-network status, United Subscribers regularly seek treatment at TGH. As noted above, since at least March 2012, TGH has treated approximately 2,500 United Subscribers.

33.      Upon information and belief, many of Defendants' Plans covering United Subscribers specifically provide "out-of-network" benefits for services rendered by out-of-network hospitals such as TGH.

**E.      TGH Receives Complete Assignments of Benefits from Defendants for the Treatment that Texas General Provides to United Subscribers.**

34.      Upon registration at TGH, all patients, including United Subscribers, execute "Assignment of Benefits" forms, among other documents. In the "Assignment of Benefits" forms, United Subscribers assign to Texas General their rights to benefits under Defendants' Plans.

35.      Specifically, these "Assignment of Benefits" forms provide, among other things, as follows:

> Assignment of Benefits. In executing this assignment of benefits, I am directing the health insurance carrier or health benefit plan providing my coverage (including, but not limited to any employer, employer group or trust sponsored or offered plan) to pay the hospital and/or hospital-based physicians directly for the services the hospital and/or hospital based physicians provided to the patient during this admission. In return for the services rendered by the hospital and/or the hospital base physicians, I hereby irrevocably assign and transfer to the hospital all right, title, and interest in all benefits payable for the healthcare rendered, which are provided in any and all insurance policies and health benefit plans from which I am entitled. I understand that any payment received from these policies and/or plans will be applied to the amount that I have agreed to pay for services rendered during this admission. This assignment shall be for the purpose of granting the hospital and/or hospital based physicians an independent right of recovery against my insurer or health benefit plan but it shall not be construed as an obligation of the hospital and/or hospital based physicians to pursue any such right of recovery. In no event will the hospital and/or hospital based physicians retain benefits in excess of the amount owed to the hospital and/or hospital based physicians for the care and treatment rendered during the admission. If a third party payer (such as an insurance company, employer group, trust sponsored or offered plan) may be obligated to pay some or all of these charges, I agree to take all actions necessary to assist the hospital and/or hospital

base physicians in collecting payment from any such third party payer. I hereby appoint the hospital as my authorized representative to pursue, if it so chooses, all administrative remedies, claims and/or lawsuits on my behalf, for the purpose of collection of any and all hospital benefits due to me for the payment of charges referred to in Section 2 above.

**F.      Texas Coverage and Payment Mandates.**

36.      The Texas Prompt Pay Act ("TPPA") requires an insurance carrier to take prompt action in response to any "clean claim"[1] received from a hospital.  Within 30 days of receiving an electronically submitted clean claim, or 45 days of receiving a clean claim in a non-electronic format, the carrier must make a determination of whether the claim is payable, and either:

i.      pay the total amount of the claim if the insurer determines it is payable;

ii.     pay any undisputed portion of the claim if the insurer determines it is partially payable, and notify the hospital in writing why the remaining portion will not be paid; or

iii.    if the insurer determines the claim is not payable, notify the hospital in writing why the claim will not be paid.

37.      If the carrier cannot, within the prescribed time, determine whether a claim is payable, the carrier must timely provide written notice that the claim will be audited.

38.      Accordingly, when a nonparticipating provider—for example, an out-of-network hospital—receives an assignment of the right to payment from a covered person, the insurance carrier is required by law to pay the hospital.

39.      An insurance carrier's dispute of a portion of the claim does not excuse the carrier from paying the remainder of the claim:  "After receipt of a clean claim and before the expiration of the applicable statutory claims payment period [a carrier] must: . . . (4) pay the portion of the clean claim for which the [carrier] acknowledges liability …, and: (A) deny the remainder of the clean claim after a determination that the [carrier] is not liable for the remainder of the clean

---

[1]      Under the TPPA, a "clean claim" is one that includes the information and complies with the format set forth by statute.  *See* TEX. INS. CODE § 1301.31; TEX. ADMIN. CODE § 21.2801, *et seq.*

claim and notify the preferred provider in writing why the remainder of the clean claim will not be paid; or (B) notify the preferred provider in writing that the remainder of the clean claim will be audited …." TEX. ADMIN. CODE § 21.2807; *see also id.* § 28.2823.

**G.     Defendants Drastically Underpay Texas General's Claims for Reimbursement.**

40.     Since at least March 2012, and continuing through the present, Texas General has treated approximately 2,500 United Subscribers at TGH, and accordingly billed Defendants for the medical services provided to these United Subscribers.  Texas General's total billed charges for these claims were approximately $187,000,000.

41.     Defendants have reimbursed Texas General for less than half of this amount— approximately $67,000,000.  Even after adjustments made by Texas General, the total unpaid amount remains more than $88,000,000.

42.     Making matters worse, there is no rhyme or reason as to how Defendants calculate the amounts that they have paid or will pay Texas General on its reimbursement claims for a particular service or treatment.

43.     For the vast majority of claims, the reimbursement amounts are low.  For instance, of the approximately 2,500 claims that Texas General submitted to Defendants for reimbursement since March 2012, 1,500 of those claims have been reimbursed by Defendants at or below 50 percent of Texas General's billed charges.  This includes more than 1,200 claims reimbursed at or below 25 percent of Texas General's billed charges; approximately 1,000 claims reimbursed at or below 12 percent; and approximately 750 claims reimbursed at or below two percent of Texas General's billed charges.  For nearly 700 claims, there has been no reimbursement at all from Defendants.

**E.**     **Texas General Exhausts Available Internal Appeals Remedies**

44.     Although Defendants have never supplied to Texas General the terms of the actual Plans covering the United Subscribers, upon information and belief, Texas General has exhausted or is in the process of exhausting all available appeals avenues under those Plans in an effort to convince Defendants to reimburse Texas General properly on its claims for the extensive treatment that TGH provided to the United Subscribers.

45.     Among other things, for certain claims, Texas General follows the processes set forth in a document prepared by Defendants and entitled, "UnitedHealthcare:   Claim Reconsideration Request Reference Guide."   This document specifies that "[a] Claim Reconsideration Request is typically the quickest way to address any concern you have with how we processed your claim. With a Claim Reconsideration Request, we review whether a claim was paid correctly, including if your provider information and/or contract are set up incorrectly in our system, which could result in the original claim being denied or reduced."

46.     In addition, where a "Claim Reconsideration Request" has either not been submitted or has been rejected, Texas General follows the appeals processes set forth in a document prepared by Defendants and entitled, "UnitedHealthcare Community Plan:   Appeal Request Form."   This form states that it "is to be completed by Physicians, Hospitals, or other health care professionals who wish to request a clinical appeal of an adverse medical determination or administrative claim made by UnitedHealthcare Community Plan."

47.     Despite exhausting the appeal procedures set forth in Defendants' own documents, Defendants have failed to fully reimburse Texas General for the health care services TGH has provided to United Subscribers, and approximately $88 million remains due and owing to Texas General for these services from March 2012 to the present.

48.     Moreover, despite exhausting the appeal procedures set forth in Defendants' own documents, Defendants have failed to adequately explain the basis for its dramatic underpayments to Texas General.  In particular, Defendants have failed or refused to:  (a) provide the specific reason or reasons for the denial of claims; (b) provide the specific plan provisions relied upon to support the denials; (c) provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; (d) describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and (e) notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits.

49.     The instant action is timely commenced well within four years after Texas General was notified by Defendants that it was rejecting or dramatically underpaying Texas General on its claims for reimbursement for the services that Texas General provided to United Subscribers, and otherwise within four years after each of Texas General's claims against Defendants accrued.

## V.     CAUSES OF ACTION

### COUNT ONE

**(Breach of Plan Provisions for Benefits in Violation of ERISA § 502(a)(1)(B))**

50.     Texas General incorporates by reference all of the foregoing allegations as if set forth at length herein.

51.     Texas General has standing to pursue claims under ERISA as an assignee and authorized representative of the United Subscribers' claims under the Plans.

52.     As the assignee of the Plans, Texas General is entitled to reimbursement under the ERISA Plans for the hospital services provided to the United Subscribers at TGH.

53.     Defendants have breached the terms of the Plans by refusing to make out-of-network reimbursements for charges covered by the Plans, in violation of ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  These breaches include, among other things, refusing to pay the usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, for medically-necessary procedures and services performed at Texas General.

54.     As a result of, among other acts, Defendants' numerous procedural and substantive violations of ERISA, any appeals are deemed exhausted or excused, and Texas General is entitled to have this Court undertake a *de novo* review of the issues raised herein.

55.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Texas General is entitled to recover unpaid/underpaid benefits from Defendants.  Texas General is also entitled to declaratory and injunctive relief to enforce the terms of the Plans and to clarify its right to future benefits under such plans, as well as attorneys' fees.

## COUNT TWO

### (Violation of Fiduciary Duties of Loyalty and Due Care in Violation of ERISA)

56.     Texas General incorporates by reference all of the foregoing allegations as if set forth at length herein.

57.     As ERISA fiduciaries, Defendants owed a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character.  Further, as fiduciaries, Defendants were required to ensure that they were acting in accordance with the documents and instruments governing the Plans, and in accordance with ERISA § 404(a)(l)(B) and (D), 29 U.S.C. § 1104(a)(l)(B) and (D).  In failing to act prudently, and in failing to act in accordance with the documents governing the Plans, Defendants have violated their fiduciary duty of care.

58.     As fiduciaries, Defendants also owed a duty of loyalty, defined as an obligation to make decisions in the interest of the plan members, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of members, in accordance with ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A) and ERISA § 406, 29 U.S.C. § 1106.   Thus, Defendants could not make benefit determinations for the purpose of saving money at the expense of the United Subscribers.

59.     Defendants have violated their fiduciary duty of loyalty by, among other things, refusing to make out-of-network reimbursements for hospital services provided at Texas General for their own benefit, at the expense of United Subscribers.   In addition, Defendants violated their fiduciary duty of loyalty by failing to inform Texas General, as assignees of the United Subscribers, of material information.

60.     Texas General has standing to pursue claims under ERISA as an assignee and authorized representative of the United Subscribers' claims.

61.     Texas General is entitled to relief to remedy Defendants' violation of their fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief.

## COUNT THREE

### (Denial of Full and Fair Review in Violation of ERISA § 503)

62.     Texas General incorporates by reference all of the foregoing allegations as if set forth at length herein.

63.     As an assignee and authorized representative of the United Subscribers' claims, Texas General is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Defendants; and (b) compliance by Defendants with applicable claims procedure regulations.

64.     Although Defendants are obligated to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Defendants have failed to do so by, among other actions:  refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.   B y  failing to comply with the ERISA claims procedures regulations, Defendants failed to provide a reasonable claims procedure.

65.     Because Defendants have failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).  Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants do not acknowledge any basis for their denials and thus offer no meaningful administrative process for challenging their denials.

66.     Texas General has been harmed by Defendants' failure to provide a full and fair review of appeals submitted under ERISA § 503, 29 U.S.C. § 1133, and by Defendants' failures to disclose information relevant to appeals and to comply with applicable claims procedure regulations.

67.     Texas General is entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations.

## COUNT FOUR

### (Breach of Contract – non-ERISA)

68.     Texas General incorporates by reference all of the foregoing allegations as if set forth at length herein.

69.     To the extent that some of the Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.

70.     As set forth more fully above, upon information and belief, under the terms of the Plans, United Subscribers are entitled to coverage for the services that they received from Texas General.

71.     By virtue of the "Assignment of Benefits" forms executed by United Subscribers, Texas General was assigned the right to receive reimbursement under the Plans for the services that it rendered to the United Subscribers.  Pursuant to said assignments of benefits, Defendants are contractually obligated to reimburse Texas General for these services.

72.     Defendants failed to make payment of benefits to Texas General in the manner and amounts required under the terms of the Plans.

73.     As set forth more fully above, upon information and belief, the Plans did not prohibit the United Subscribers from assigning their rights to benefits under the Plans to Texas General, including the right of direct payment of benefits under the Plans to Texas General.

74.     Moreover, as set forth more fully above, to the extent that the Plans prohibited the

assignment of benefits to Texas General, Defendants have waived any purported anti-assignment provisions, have ratified the assignment of benefits to Texas General, and/or are estopped from using any purported anti-assignment provisions against Texas General due to its course of dealing with and statements to Texas General as an out-of-network provider, discussed more fully above.

75.     Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Texas General, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Texas General.

76.     As the result of Defendants' failures to comply with the terms of the Plans, Texas General, as assignee, has suffered damages and lost benefits, for which it is entitled to damages from Defendants, including unpaid benefits, restitution, interest, and other contractual damages sustained by Texas General.

## COUNT FIVE

### (Breach of the Duty of Good Faith and Fair Dealing – non-ERISA)

77.     Texas General incorporates by reference all of the foregoing allegations as if set forth at length herein.

78.     As set forth more fully above, if any of the Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.  As such, the Plans contain an implied duty of good faith and fair dealing.

79.     Defendants, as the obligor under the Plans, owed the United Subscribers a duty of good faith and fair dealing with respect to said Plans.

80.     As set forth more fully above, the United Subscribers received health care

services at Texas General and executed "Assignment of Benefit" forms, among other documents, in which they assigned to Texas General their right to benefits under the Plans for the services that Texas General provided to the United Subscribers.

81.    By virtue of these assignments, Defendants also owe this duty of good faith and fair dealing to Texas General.

82.    As set forth more fully above, upon information and belief, the Plans did not prohibit the United Subscribers from assigning their rights to benefits under the Plans to Texas General, including the right of direct payment of benefits under the Plans to Texas General.

83.    Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Texas General, Defendants have waived any purported anti-assignment provisions, have ratified the assignment of benefits to Texas General, and/or are estopped from using any purported anti-assignment provisions against Texas General due to their course of dealing with and statements to Texas General as an out-of-network provider, discussed more fully above.

84.    Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Texas General, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Texas General.

85.    Defendants breached their duty of good faith and fair dealing owed to Texas General, as assignee of rights and benefits under the Plans, in a number of ways, described more fully above.

86.    Without limitation, Defendant's breaches include, but are not limited to, the following:

a.      Defendants' inadequate reimbursement to Texas General relative to Texas General's charges for the health care services TGH provided to the United Subscribers, when Defendants' liability for those amounts was reasonably clear;

b.      Defendants' failures to provide Texas General with adequate written explanations for the failure to reimburse all or a portion of Texas General's claims for the services provided to United Subscribers, as is required under the TPPA;

c.      Defendants' failures to reimburse Texas General's charges for the health care services provided to the United Subscribers, and their failures to provide adequate written explanations for the failure to pay all or a portion of such claims, within the statutorily proscribed time frames under the TPPA;

d.      Defendants' arbitrary methodology for determining whether and the amount to reimburse Texas General for the services TGH provided to United Subscribers;

e.      Defendants' patently inadequate explanations for their under-reimbursement of Texas General.

87.     Defendants' conduct in derogation of their duty of good faith and fair dealing under the Plans has deprived Texas General of its reasonable expectations and benefits as assignee of benefits under the Plans.

## COUNT SIX

### (Breach of Fiduciary Duty – non-ERISA)

88.     Texas General incorporates by reference all of the foregoing allegations as if set forth at length herein.

89.     At all relevant times, Defendants were the plan administrator, fiduciary, relevant party-in-interest, and/or the obligor for the Plans.  As such, even if some of the Plans are not

employee welfare benefit plans governed by ERISA, Defendants nonetheless owed and owe the United Subscribers fiduciary duties under the Plans.

90.     As set forth more fully above, United Subscribers have received health care services at Texas General and executed "Assignment of Benefits" forms, among other documents, in which they assigned to Texas General their rights to benefits under the Plans for the services that TGH provided to the United Subscribers.

91.     By virtue of these assignments, Defendants also owed and owe this fiduciary duty to Texas General.

92.     As set forth more fully above, upon information and belief, the Plans did not prohibit United Subscribers from assigning their rights to benefits under the Plans to Texas General, including the right of direct payment of benefits under the Plans to Texas General.

93.     Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Texas General, Defendants have waived any purported anti-assignment provisions, have ratified the assignment of benefits to Texas General, and/or are estopped from using any purported anti-assignment provisions against Texas General due to their course of dealing with and statements to Texas General as an out-of-network provider, discussed more fully above.

94.     Moreover, as set forth more fully above, to the extent that the Plans prohibited the assignment of benefits to Texas General, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Texas General.

95.     Defendants breached their fiduciary duties owed to Texas General in a number of ways, described more fully above.

96.     As the result of Defendants' violations of their fiduciary duties to Texas General, Texas General has suffered, and continues to suffer, substantial damages.

## COUNT SEVEN

### (Quantum Meruit)

97.     Texas General incorporates by reference all of the foregoing allegations as if set forth at length herein.

98.     Texas General has conferred upon Defendants the benefit of providing treatment to United Subscribers.

99.     At the times Texas General treated the United Subscribers, Texas General reasonably expected remuneration from Defendants in the form of its full billed charges minus any applicable patient responsibilities.

100.    By underpaying Texas General for the treatment that Texas General provided to United Subscribers, Defendants have been unjustly enriched.

101.    As the result of Defendants unlawful, unjust, and wrongful acts, Texas General suffered and continues to suffer damages, and it is owed restitution from Defendants.

## COUNT EIGHT

### (Promissory Estoppel)

102.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

103.    Defendants represented to Texas General that the medical treatment sought by the Patients at Texas General was a covered procedure under the Plans, and that the fees associated with that treatment were Covered Charges under the Plans.  Based on Defendants' statements that the patients seeking medical care and treatment had active coverage and benefits, Texas General reasonably understood that some payment would be forthcoming for the hospital

services provided at Texas General related to these procedures.

104.    Texas General provided hospital services to United Subscribers in reliance on Defendants' statements regarding coverage and benefits.   In the absence of Defendants' statements that they would make remuneration for the fees associated with this treatment, Texas General would not have provided the hospital services.  This reliance was foreseeable, as Defendants' representations were made in the context of telephone calls from Texas General's billing agents to verify and pre-certify coverage prior to the hospital services being provided, and there was no ability for Texas General to learn, separate and apart from Defendants' representations, whether Defendants considered the fees related to these hospital services to be covered charges under the relevant Plans.

105.    As a result of Texas General's reliance on Defendants' statements, Texas General has suffered and continues to suffer injury, including money damages, and injustice can only be avoided by Defendants honoring their previous promises.

<u>COUNT NINE</u>

**(Temporary and Permanent Injunctive Relief)**

106.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

107.    Currently, Defendants are wrongfully denying payment for virtually all claims for benefits submitted for hospital services provided at Texas General.  In so doing, Defendants have failed and are failing to comply with the terms of the Plans and their other obligations, including their obligations under ERISA.

108.    Unless enjoined from doing so, Defendants will continue not to comply with the terms of the Plans and their other obligations, including under ERISA, to Texas General's severe detriment.  A monetary judgment in this case will only compensate Texas General for past

losses, and will not stop Defendants from continuing to confiscate the money earned by Texas General and necessary to maintain its medical facility.  Texas General has no practical or adequate remedy, either administratively or at law, to avoid these future losses.

109.   Texas General is entitled to a preliminary and permanent injunction requiring Defendants to process claims for hospital services performed at Texas General in accordance with the terms of the Plans, and requiring Defendants to stop summarily denying claims for medically- necessary services provided by Texas General.

## VI.   CONDITIONS PRECEDENT

110.   All conditions precedent have been performed or have occurred.

## VII.   JURY DEMAND

111.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Texas General hereby requests a trial by jury on all issues so triable.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Texas General demands judgment in its favor against Defendants as follows:

A.     Declaring that Defendants have breached the terms of the Plans with regard to out-of-network benefits and awarding damages for unpaid out-of- network benefits, as well as awarding injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein that are unauthorized by the Plans;

B.     Declaring that Defendants failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Defendants' actions, as well as awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA

and its claims procedure regulations;

C.     Declaring that Defendants violated their fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1106, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA;

D.     Awarding damages based on Defendants' misrepresentations and nondisclosures regarding the existence of benefits for these hospital services based on promissory estoppel, including any exemplary damages permitted by law;

E.     Temporarily and permanently enjoining Defendants from continuing to pursue their actions detailed herein, and ordering Defendants to pay benefits in accordance with the terms of the Plans and applicable law;

F.     Awarding lost profits, contractual damages, and compensatory damages in such amounts as the proofs at trial shall show;

G.     Awarding exemplary damages for Defendants' intentional and tortious conduct in such amounts as the proofs at trial will show;

H.     Awarding restitution for reimbursements improperly withheld by Defendants;

I.     Declaring that Defendants have violated the terms of the relevant plans and/or policies of insurance covering the United Subscribers;

J.     Requiring Defendants to make full payment on all previously denied charges relating to the United Subscribers;

K.     Requiring Defendants to pay Texas General the benefit amounts as required under the Plans;

L.     Awarding reasonable attorneys' fees, as provided by common law, federal or state statute, or equity, including Chapter 38.001 et seq. of the Texas Civil Practice and

Remedies Code and § 502(g) of ERISA, 29 U.S.C. § 1132(g);

M.      Awarding costs of suit;

N.      Awarding pre-judgment and post-judgment interest as provided by common law, federal or state statute or rule, or equity; and

O.      Awarding all other relief to which Plaintiffs are entitled.

Respectfully submitted,

**K&L GATES, LLP**

By: /s/ *Beth Bivans Petronio* _____
Beth Bivans Petronio
Texas Bar No. 00797664
beth.petronio@klgates.com
Thomas K. Schroeter
Texas Bar No. 24056279
thomas.schroeter@klgates.com
Edward L. Vishnevetsky
Bar No. 24063049
Edward.vishnevetsky@klgates.com

1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500  Telephone
(214) 939-5849  Facsimile

Anthony P. La Rocco
*Pro Hac Pending*
anthony.larocco@klgates.com
George P. Barbatsuly, Esq.
*Pro Hac Pending*
george.barbatsuly@klgates.com

One Newark Center, 10th Floor
Newark, New Jersey 07102
(973) 848.4104  Telephone
(973) 556.1584 Facsimile

***Attorneys for Plaintiffs Texas General
Hospital, LP, and Texas General GP,
L.L.C.***